**In re Ralph and Betty LOSS, Debtors.**

**Bankruptcy No. 82–20631.**

United States Bankruptcy Court, W.D. New York.

Feb. 4, 1983.

Kenneth Mason, Rochester, N.Y., for debtors.

Richard Levine, Rochester, N.Y., for Paul Schreiber.

MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

This is a valuation hearing in a Chapter 13. The debtors are dairy farmers.

A question has arisen as to the extent of the security Paul Schreiber, a creditor, has

in certain cows which are part of the debtors' dairy herd. A hearing has been held to determine the value of the said cattle. The debtors and two appraisers testified as to the value of the cows. Both appraisers indicated that the value of the cows change on a day to day basis.

The appraiser presented by the debtor valued the Schreiber cattle at $14,250. He valued the cattle secured to Farmers Home Administration at $14,725. He had available to him the breeding dates and the milking records of the various cattle. On cross-examination, it appeared that he was a friend of the debtors and lives about 13 miles from them. He also is a dairy farmer and he buys cattle occasionally on his own behalf. He helps an auctioneer dispose of cattle. His experience in auctioning and in buying cattle has been limited. This is his first appearance in Court to testify as an expert.

The other auctioneer, presented by Paul Schreiber, is employed by one of the largest cattle selling auction companies in New York State. He manages the sales for them. He is auctioning cattle two or three times a week. He has at least 12 years experience in the business. He is familiar with the day to day price cattle bring. In appraising the cattle, he appraised 50 head. Thirty head of the cattle were identified to him as Schreiber cattle and were valued by him at $26,700. He offered to buy the cattle for that price, if he had the breeding dates of the cattle, if the udders were in good shape, and if the cattle were found to be clear of TB and brucellosis and if they were found safe in calf at the breeding dates stated by the debtors.

The security agreement, which Schreiber has covering the 30 cattle, also covers the offspring of the cattle. Mr. Hughs, the Schreiber appraiser, inspected some 25 heifers (young cows that had not been bred) and he valued them at $7,300. The debtors testified that they could not identify the progeny of the Schreiber cows but admitted on cross-examination that around 50% of the heifers which Hughs had examined might be Schreiber cows though they could not be sure of it.

After a review of the testimony, the value of the herd on which Paul Schreiber has a lien is set at $30,350, which is arrived at by taking the valuation of the identified Schreiber cattle set by Mr. Hughs and taking the valuation of half of the heifers set by Hughs. Mr. Hughs' appraisal was used rather than Dann's because Mr. Hughs was much more experienced, he was not related to Paul Schreiber, he was not a friend of the debtors as was Dann and he had much more experience in the valuation of cattle. Furthermore, he was ready to purchase the cattle on the date he saw them at that value if certain criteria previously mentioned were met. There was no testimony showing that any of these conditions existed. The burden of proof primarily is upon the debtors to establish the value of their assets. Therefore, the valuation of the lien of Schreiber upon the debtors' cattle is set at $30,350 and it is so ordered.